IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BRIAN SUNDBERG,

        Petitioner,

vs.

SCOTT FRAKES,
Director of Corrections,

        Respondent.

8:20CV475

**MEMORANDUM AND ORDER**

    Mr. Sundberg has filed a petition for writ of habeas corpus challenging his conviction and very long sentence for having sex with his very young child over an extended period of time. The matter has been briefed and is ripe for ruling. I deny the petition with prejudice.

*Background*

    On November 8, 2017, Petitioner Brian Sundberg pled no contest in the District Court of Douglas County, Nebraska, to one count of first degree sexual assault on a child, a Class IB felony. (Filing 10-10 at CM/ECF pp. 2, 6.) In exchange for his plea, the State dismissed two additional counts of first degree sexual assault on a child. (*Id.* at CM/ECF pp. 2-3; Filing 10-14 at CM/ECF pp. 4-5.) At the plea hearing, the state district court inquired as to whether Sundberg suffered from any mental or emotional disability or had been treated for a mental illness. (*Id.* at CM/ECF pp. 6-7.) Sundberg advised that he had never been treated or diagnosed, but stated that it was a possibility that he had ADHD and/or bipolar disorder when he was younger. (*Id.*)

    Prior to accepting Sundberg's no contest plea, the district court informed Sundberg of the nature of the charge and the possible penalty. (*Id.* at CM/ECF pp.

10-11.) Specifically, the court informed Sundberg that by pleading no contest to a Class IB felony he was facing a possible sentence of 20 years to life in prison, with a 15-year mandatory minimum sentence. (*Id.*) Sundberg stated that he understood the sentencing range, and he advised the court that he had not been led to believe that he would receive a light sentence or be rewarded for entering his no contest plea. (*Id.* at CM/ECF pp. 12-13.) He also confirmed that no threats, inducements, or promises of leniency had been made in order to obtain his plea. (*Id.* at CM/ECF p. 13.)

In addition to advising Sundberg of the standard constitutional rights that he was waiving by pleading no contest (*Id.* at CM/ECF pp. 8-10), the court also advised him that he was waiving his right to a hearing outside the presence of the jury to determine whether any statements he made were freely and voluntarily given and that they were made only after he was fully and fairly advised of his *Miranda* rights. (*Id.* at CM/ECF pp. 13-15.) Sundberg stated that he understood and that he had sufficient time to discuss everything with his attorney. (*Id.*)

The factual basis given by the State at the plea hearing established that on February 14, 2017, a teacher reported that six-year-old A.S.H. was looking at pornography on an iPad at school. (*Id.* at CM/ECF p. 15.) At that time, A.S.H. reported that her father, Sundberg, looks it up with her at home and he "does it with her." (*Id.*) A forensic interview took place on February 22, 2017, during which A.S.H. described vaginal and anal penetration by Sundberg. (*Id.*) She also stated that Sundberg had shown her pornography of both adults and children. (*Id.*) Her mother was later interviewed and indicated that A.S.H. had been watching pornography on YouTube at home for about six months. (*Id.* at CM/ECF pp. 15-16.) Sundberg was interviewed and admitted to sexually assaulting A.S.H. since she was two years old; he was 28 years old at that time the assaults began. (*Id.* at CM/ECF p. 16.) Sundberg detailed the types of penetration he subjected A.S.H. to over of the years. (*Id.*) He stated that the last time he had penetrated A.S.H. was one week prior to the interview and that he was unable to give the number of times he had assaulted A.S.H. because

2

it had been going on for so long. (*Id.*) Sundberg also admitted to watching pornography with A.S.H. (*Id.*)

At the sentencing hearing, Sundberg's counsel informed the court that Sundberg deeply regretted his actions and the harm that was done to his daughter. (*Id.* at CM/ECF p. 21.) Sundberg himself stated that he was very sorry for what he had done and that nothing he could say or do would ever make it justified, although he appeared to place some of the blame on his regular marijuana use. (*Id.* at CM/ECF pp. 21-22.) Defense counsel further argued that Sundberg had taken responsibility for his actions by pleading no contest and that he made that decision because he never wanted to put his child through a trial. (*Id.* at CM/ECF p. 20.) Counsel also stated the following:

> I know it's hard for us to fathom this, but I believe that [Sundberg] is very sincere that in a right state of mind, in a healthy place of mind, he never intended to hurt his child. He has not been able to quite adequately put his hands around what the issue is, but he's always explained it that there is a - - almost as though he was possessed of a dark being when he did these things. And if that's his way of thinking about it, you know, it's probably as close as any of us are going to get, quite frankly, to the why and where of these things happen.

(*Id.*)

The state district court ultimately sentenced Sundberg to 90 to 120 years in prison. (*Id.* at CM/ECF pp. 24-25; Filing 10-10 at CM/ECF pp. 8-9.) In imposing the sentence, the court stated the following:

> Well, Mr. Sundberg, I don't know what words I could even use to tell you how appalled I've been by your behavior as identified in the Presentence Investigation and with the police reports. Your willingness to place your daughter in this situation for three and a half to four years on a regular basis, convincing her, as a baby, to think that having sex with you was okay and normal is disgusting.

3

> . . .
> And I don't know how she'll ever get over it. You've damaged another person's life based on your lack of morality. I personally don't think you should ever be, at any time, allowed to be out of prison.

(Filing 10-14 at CM/ECF p. 24.)

Sundberg, with trial counsel, filed a direct appeal of his conviction and sentence, alleging solely that the district court abused its discretion by imposing an excessive sentence. (Filing 10-4 at CM/ECF p. 4.) The Nebraska Court of Appeals affirmed the judgment of the district court by sustaining the State's motion for summary affirmance on June 25, 2018. (Filing 10-1 at CM/ECF p. 3.) Sundberg did not petition the Nebraska Supreme Court for further review. (See *Id.*)

On June 5, 2019, Sundberg filed a timely motion for postconviction relief in the state district court, alleging that trial counsel was ineffective for: (1) failing to file a motion to discharge on speedy trial grounds; (2) failing to file a motion to suppress his statement to law enforcement; (3) failing to investigate an insanity defense; (4) failing to argue on direct appeal that the district court breached the sentencing agreement; and (5) failing to argue on direct appeal that the district court imposed a sentence that was disproportionate to any and all first degree sexual assaults in all state cases and federal cases constituting cruel and unusual punishment. (Filing 10-11 at CM/ECF pp. 6-12.)

On October 29, 2019, the state district court entered a written order denying Sundberg postconviction relief without an evidentiary hearing. (*Id.* at CM/ECF pp. 57-62.) Sundberg appealed, and on August 19, 2020, the Nebraska Court of Appeals entered a Memorandum Web Opinion affirming the state district court's judgment. (Filing 10-2 at CM/ECF p. 4.) In its opinion, the court individually addressed each of Sundberg's five allegations of ineffective assistance of counsel and found that the state district court properly denied those allegations without an evidentiary hearing.

4

(Filing 10-3 at CM/ECF pp. 10-19.) The specific findings set forth by the appellate court for each claim will be addressed later.

Sundberg petitioned the Nebraska Supreme Court for further review, assigning that the Nebraska Court of Appeals erred in affirming the denial of his five ineffective assistance of counsel claims. (Filing 10-9 at CM/ECF p. 2.) The Nebraska Supreme Court declined further review on October 7, 2020, and the mandate was issued on October 21, 2020. (Filing 10-2 at CM/ECF p. 4.)

On November 13, 2020, Sundberg filed a timely habeas petition, alleging the same five claims of ineffective assistance of counsel that he raised in his state postconviction proceedings. (See Filing 1.) Specifically, as stated by this Court, Sundberg raised the following five claims in his habeas petition:

> CLAIM ONE: Ineffective assistance of counsel for failing to file a motion to discharge defendant on Speedy Trial ground violations.
>
> CLAIM TWO: Ineffective assistance of counsel for failure to file a motion to suppress defendant's statements to police.
>
> CLAIM THREE: Ineffective assistance of counsel for failure to investigate insanity defense.
>
> CLAIM FOUR: Ineffective assistance of counsel for failing to argue on appeal District Court breached plea agreement.
>
> CLAIM FIVE: Ineffective assistance of counsel for failing to raise on appeal District Court imposed a disproportionate sentence.

(Filing 8 at CM/ECF p. 1.)

*Law*

Three strands of federal habeas law intertwine in this case. They are the law of exhaustion and procedural default, the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court, and the standard for evaluating a claim of ineffective assistance of counsel.

I briefly set out those principles now, so that I may apply them later in a summary fashion as I review Petitioner's claims. I turn to that task next.

***Exhaustion and Procedural Default***

As set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, then in an appeal to the Nebraska Court of Appeals, and finally in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate

state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### *Nebraska Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.").

Moreover, a person seeking post-conviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim

on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying post-conviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.") Likewise, a bare-bones allegation in a post-conviction motion is insufficient. It must allege specific facts, or the claim is lost because the law of Nebraska has not been satisfied. *See*, *e.g.*, *State v. Starks*, 883 N.W.2d 310, 317 (Neb. 2016) ("Thus, in a motion for postconviction relief, the defendant <u>must</u> allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.") (Emphasis added.)

More specifically, if a person raises an issue in an initial motion for post-conviction relief but fails to raise it in an amended motion, the claim is defaulted under Nebraska law. *State v. Armendariz*, 857 N.W.2d 775, 789 (Neb. 2015) (affirming denial of post-conviction relief in a murder case and stating that "[a]n amended pleading supersedes the original pleading, whereupon the original pleading ceases to perform any office as a pleading. It is clear the district court did not err in limiting its analysis to the motion that was before it—the amended motion.").

Similarly, on appeal, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

9

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, § 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### *The Especially Deferential Strickland Standard*

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

11

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

*Strickland* applies equally to appellate counsel, and appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

Moreover, to satisfy the prejudice prong of a claim of ineffective assistance of appellate counsel, it is not enough for the defendant to show that counsel's errors had some conceivable effect on the outcome of the proceeding. Instead, professional deficiencies on the part of appellate counsel will only provide constitutional relief if the deficiencies actually affected defendant's appellate proceedings. *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005).

*Analysis*

All five claims are easy to resolve. I turn briefly to those claims.

First, the Nebraska Court of Appeals disposed of this claim after a thorough review. (Filing 10-3 at CM/ECF pp.10-12.) There is no basis for concluding that Nebraska's speedy trial requirements were violated and thus no basis for concluding that Petitioner was denied effective assistance of counsel. In short, there is no basis for concluding that the Nebraska Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Strickland*.

Second, again, the Nebraska Court of Appeals carefully examined the claim that his counsel was deficient for failing to pursue a suppression motion and instead found that *Strickland* was not violated. (Filing 10-3 at CM/ECF pp. 12-15.) This was not unreasonable, and it did not involve a misapplication of *Strickland* especially because he was advised at the time of his plea that he was waiving his right to file a suppression motion, he decided to proceed despite that waiver, and he also elected to proceed with his plea without asking for additional time to consult his counsel.

Third, his attack on his counsel for failing to investigate an insanity defense was procedurally defaulted without excuse. While the Nebraska Court of Appeals found that Petitioner raised the issue, he failed to follow the state law requirements of specificity regarding the facts and thus the claim was in default. (Filing 10-3 at CM/ECF pp. 14-15.) Having failed to follow the state law that requires specificity,

13

he exhausted the claim but only by procedural default. In short, under Nebraska law a petitioner cannot throw a generalized claim against the wall and hope that it sticks.[1]

Fourth, Sundberg makes the baseless claim that he was promised a lesser sentence by the trial judge and counsel failed to raise that issue on direct appeal. The Nebraska Court of Appeals rejected that claim on the merits. As a factual matter the Nebraska Court of Appeals found that no promise was made by the district judge and thus counsel could not have been ineffective for raising the issue on direct appeal. (Filing 10-3 at CM/ECF pp. 16-17.) At bottom, one must remember that § 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal court must presume that a factual determination made by the state court is correct unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not come close to rebutting the factual determination of the Nebraska Court of Appeals.

Fifth, and finally, Petitioner argues that the sentence he received was more harsh than other sex offenders and counsel was deficient when he failed to make that argument on direct appeal.[2] The Nebraska Court of Appeals made short shrift of this argument. (Filing 10-3 at CM/ECF pp. 17-18.) Among other things, the court stated, "even if counsel would have raised this argument on direct appeal, the argument would not have been successful." (*Id.* at pp. 18.) Given the fact that Sundberg sexually assaulted his daughter from age 2 to age 6, that the sexual activity included anal rape, vaginal rape, and fellatio, and further that he could not remember the

---

[1] There is nothing in the record to show that the default can or should be excused.

[2] Counsel did raise on direct appeal the assertion that the sentence was excessive.

14

number of times he engaged in such depravity, the decision of the Nebraska Court of Appeals was correct in all respects.

### *Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his or her petition for writ of habeas corpus under § 2254 unless he or she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484–485 (2000). I have applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the petition, Filing 1, is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. A separate judgment will be issued.

Dated this 7th day of April, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

15